# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOROTHY LAURA ASHER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-3058** |
| **MICHAEL J. ASTRUE**<br>**COMMISSION OR SOCIAL**<br>**SECURITY ADMINISTRATION** | **SECTION "C" (3)** |

## ORDER AND REASONS

### I. INTRODUCTION

This civil action comes before this Court on the Report and Recommendations of Magistrate Judge Daniel E. Knowles, III and the plaintiff's objections thereto. On June 13, 2011, the Magistrate Judge issued a Report and Recommendation that the summary judgment motion of the Plaintiff, Dorothy Laura Asher ("Asher"), be denied, that the cross-motion filed by the Commissioner of the Social Security Administration ("Commissioner") be granted, and that the Plaintiff's case be dismissed with prejudice, resulting in the denial of Supplemental Security Income ("SSI") and widow survivor benefits to the plaintiff. Rec. Doc. 25. Asher filed objections. Rec. Doc. 26. Having considered the record, the applicable law, the Magistrate Judge's Report and Recommendation and plaintiff's objections thereto, hereby approves the Report and Recommendation and adopts it as its opinion, as supplemented herein.

### II. BACKGROUND AND PROCEDURAL HISTORY

Asher was born in November 1956, is the mother of two children (R. 276), and attended school up to the sixth grade (R. 331, 455). Asher's employment history is sparse and sporadic. She was employed as a tomato grader from approximately 1980 to 1981. (R. 156, 209) and then, eleven years later, as an attendant from 1992 to 1996. (R. 97). Asher's next stint of employment was as housekeeper for a hotel for approximately one month sometime around July of 1998. (R.131, 150). While employed as a housekeeper, Asher allegedly slipped and fell on the job, claiming injury to her back. (R. 274). Asher underwent two surgeries, a cervical diskectomy and fusion on November 29, 2000, and a lumbar laminectomy on March 7, 2001. (R. 18).

On June 4, 2006, Asher's husband passed away. (R. 437-38). Asher filed a claim for SSI benefits on June 9, 2006, alleging an onset disability date of August 1, 1998. (R. 142). Asher's application for SSI benefits was denied and Asher timely requested a hearing by an Administrative Law Judge ("ALJ"). (R. 48). A hearing was conducted on September 24, 2007, where Asher, represented by counsel, appeared and testified. (R. 35).

On October 18, 2007, while the ALJ's decision was pending, Asher was allegedly involved in an automobile accident in Slidell, Louisiana.. (R. 366, 368). Three days later, on October 21, 2007, Asher visited Highland Community Hospital in Picayune, Mississippi, complaining of neck, back, and leg pain. (R. 366). The Highland Community Hospital ER report noted that, on the day of the accident, Asher visited a different hospital, but left without being seen. (R. 366, 368). The ER report also noted that upon discharge from Highland Community Hospital, Asher could move all extremities without difficulty, voiced no complaints, and was discharged in good condition. (R. 365-67).

On October 29, 2007, Asher began seeing Dr. James Dyess for pain management, claiming that the pain in her back and neck was at the highest possible level of severity, i.e., a ten out of ten on a pain scale. (R. 190, 395). Dr. Dyess treated Asher until April of 2009, seeing her almost monthly with treatments that involved performing range of motion examinations and prescribing a series of pain killers, antidepressants, and muscle relaxers. (R. 413-34). In frequent letters to Asher's attorney and in his examination notes, Dr. Dyess recommended that Asher maintain a "no work" status up until approximately November 18, 2008. (R. 420). In one of the final letters to Asher's attorney on March 10, 2009, after nearly a year and four months of Asher receiving care and medication, Dr. Dyess noted "[Asher] report[s] all symptoms overall have increased in intensity . . . ." (R. 413).

In the beginning of January 18, 2008, the ALJ issued a written decision determining that Asher was not disabled because she possessed the residual functional capacity to perform light, unskilled work that did not require detailed or complex job instructions. (R. 35-43). The ALJ also determined that Asher's statements concerning the "intensity, persistence and limiting effect of [her] symptoms [were] not entirely credible." (R. 41). Asher promptly requested review of ALJ's decision by the Appeals Council ("AC") on January 31, 2008. (R. 30).

While the request for review was pending with the AC, Asher filed for disabled widows benefits on March 26, 2008. (R. 437). The next year, on January 22, 2009, the AC vacated the decision of the ALJ and remanded Asher's case explaining that the ALJ had failed to obtain evidence clarifying the effect of the assessed limitations on Asher's occupational base of unskilled work. (R. 26-27). The AC also instructed the ALJ to consolidate Asher's claims for widow survivor benefits and SSI and to issue a new decision as to both applications. (R. 27).

On May 1, 2009, the ALJ conducted a hearing on remand. Again, Asher, represented by counsel, appeared and testified. (R. 451). In addition, a vocational expert testified that a person restricted from carrying out detailed or complex job instructions would not erode the occupational base of unskilled work at any exertional level. (R. 461). On May 28, 2009, the ALJ denied Asher's application for widow survivor benefits and SSI finding that Asher was capable of performing the full range of light unskilled work. (R. 15-24).

Asher requested review by the AC of the ALJ's determination made on remand. (R. 4). While Asher's request for review was pending, Asher submitted two new pieces of evidence to the AC for consideration: a "Residual Functional Capacity Questionnaire" ("RFC Questionnaire") filled out by Dr. James Dyess on June 29, 2009, at the request of Asher's attorney (R. 448-49), and a letter from Asher's attorney dated February 1, 2010, objecting to the ALJ's findings and arguing that Asher should be awarded disability from the date of her alleged automobile accident (R. 446-47). On July 22, 2010, the AC denied Asher's request for a review. (R. 4-6). In its notice denying review of Asher's case, the AC, under the heading "What We Considered," stated: "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." ( R.4-6). Asher timely filed this civil action.

## III. STANDARD OF REVIEW

Within the realm of the Social Security Act, the AC possesses "certiorari-like jurisdiction" over decisions by ALJs denying benefits to claimants. *Eads v. Sec'y of Dept. of*

4

*Health and Human Services*, 983 F.2d 815, 816 (7th Cir. 1993) (Posner, J.); 20 C.F.R. §§ 404.967, 416.1467.[1] In addition to requesting review, a claimant may submit additional evidence to the AC for consideration, provided the evidence is new, material, and relates to a period on or before the ALJ's decision. 20 C.F.R. §§ 404.967, 416.1467. The AC will then evaluate the entire record, including any new evidence, and review the case if the AC finds that the ALJ erred. *See id.* If the AC denies an application to review the ALJ's decision, the effect is to make the decision final, and thus judicially reviewable. 20 C.F.R. §§ 404.981, 416.1481. Here, Asher has exhausted her administrative remedies and her case is ripe for judicial review.

A district court reviews the report and recommendation of a magistrate judge de novo. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Pro. 72(b)(3). However, in reviewing the Commissioner's decision to deny benefits, the court is limited to a determination of whether the Commissioner's decision was supported by (1) substantial evidence existing in the record, as a whole and (2) whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). If the Commissioner's findings are supported by substantial evidence, they must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

---

[1] Because Asher's appeal relates to her disability for disabled widow benefits and SSI, two different parts of the Social Security Act are implicated. Old-age, survivors, or disability claims are governed by 20 C.F.R. pt. 404, whereas SSI is governed by 20 C.F.R. pt. 416. The pertinent sections are the same for the two programs. *See Brandyburg v. Sullivan*, 959 F.2d 555, 559 nn. 2-3 (5th Cir.1992).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). However, a district court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992).

In the Fifth Circuit, the final decision of the Commissioner includes the AC's denial of a claimant's request for review of the ALJ's decision. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). In addition, evidence submitted for the first time to the AC is part of the record on appeal to the district court. *Id*.

## IV. DISCUSSION

Asher presents three objections to the Report and Recommendation: (1) the Magistrate Judge erred in finding that Dr. Dyess rendered an opinion on issues reserved to the Commissioner; (2) the Magistrate Judge erred in finding that the RFC Questionnaire was not a medical opinion evident of disability and that it was based on the same medical information and records underlying the denial of benefits; and (3) the Magistrate Judge erred in finding that the AC applied the proper legal standards in evaluated Dr. Dyess' RFC Questionnaire. Rec. Doc. 26. Asher claims that a remand is required in order for evaluation of the RFC Questionnaire of her treating physician, Dr. Dyess, that was submitted only to the AC. In support of her objections, Asher cites to the plain language of 20 C.F.R. § 404.1527 and Social Security Ruling

96-2p. This Court finds that any lack of explanation by the AC was harmless because Dr. Dyess' RFC Questionnaire was a repetitive summary of information already contained in the record considered by the ALJ in his determination that Asher was not disabled.

Dr. Dyess' status as a treating physician is not disputed. The question before this Court is whether any further explanation by the AC is required for the opinion of a treating physician submitted only to the AC when this opinion duplicates information already in the record considered by the ALJ when the ALJ made his or her decision. Asher's claim regarding an explanation by the AC is not novel. Courts have dealt directly with this question and touched on it in passing. *See, e.g.*, *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001); *Newton v. Apfel*, 209 F.3d 448, 459-60 (5th Cir. 2000); *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994); *Stewart v. Astrue*, No. 7-07-CV-052-BD, 2008 WL 4290917, at *3-4 (N.D. Tex. Sept. 18, 2008).

The basic procedures for evaluating medical opinion evidence are outlined in 20 C.F.R. §§ 404.1527, 416.927. Medical opinion evidence is defined as "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) . . . what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Sections 404.1527 and 416.927 also outline how an adjudicator should treat and analyze opinion evidence submitted by a claimant. Specifically, Sections 404.1527(d)(2) and 416.927(d)(2), speaking from the voice of the Commissioner, pledges to a claimant that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." "When the Appeals Council makes a decision, it will follow the same rules

7

for considering opinion evidence as administrative law judges follow." 20 C.F.R. §§ 404.1527(f)(3), 416.927(f)(3).

Social Security Ruling 96-2p further buttresses the pledge provided in sections 404.1527(d)(2) and 416.927(d)(2). While the Social Security Administration's rulings are not binding on this Court, the rulings may be consulted when the statute at issue is not clear and the legislative history offers no guidance. *B.B. ex rel. A.L.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981). Although the pertinent statutes in the Social Security Act are clear, the rulings nevertheless provide insight into the explicative function of a Social Security adjudicator. Under the heading "Explanation of the Weight Given to a Treating Source's Medical Opinion," Social Security Ruling 96-2p explains that when a determination or decision is a denial, "[p]aragraph (d)(2) of 20 CFR 404.1527 and 416.927 requires that the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s) . . . ." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The reason for the requirement that the adjudicator explain the weight given to the treating source's medical opinion is to enable meaningful judicial review of the adjudicator's determinations. *See id.* Indeed, Ruling 96-2p outlines that the explanation "must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* Here, the AC's language may be "boilerplate" but does not warrant remand.

Cases within the Fifth Circuit have determined that full explanation by the AC of weight given to new evidence has been indefinitely suspended by the Executive Director of Appellate Operations. *Higginbotham*, 405 F.3d at 335 n.1; *Davis v. Astrue*, No. 3:10-CV-958-P-BH, 2011

WL 444776, at *10 (N.D. Tex. Jan. 07, 2011); *see Jones v. Astrue*, 228 Fed. Appx. 403, 407 (5th Cir. 2007). In addition to sections 404.1527(d)(2) and 416.927(d)(2), the *Hearings, Appeals and Litigation Law Manual* (HALLEX) section I-3-501 (Nov. 11, 1994) provides that the AC must specifically address additional evidence or legal arguments submitted in connection for review. *See Newton*, 209 F.3d at 459. The Executive Director of Appellate Operations nevertheless suspended the requirement of detailed explanations by the AC in a memorandum dated July 20, 1995. *Higginbotham*, 405 F.3d at 335 n.1. Even though the Executive Director of Appellate Operations' suspension was purportedly temporary, there is no indication that the suspension has been lifted. *Davis*, 2011 WL 4447766, at *10 n.2.

The Fifth Circuit permits some leeway in administrative proceedings pertaining to the Social Security Administration. As asserted in *Mays v. Bowen*, "[p]rocedural perfection in administrative proceedings is not required." 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). Indeed, at least one other circuit has commented directly on this leeway regarding the AC's denial of a request for review: "[A]n Appeals Council decision refusing review has all the hallmarks of a discretionary decision: the Appeals Council need not and often does not give reasons, and the regulations appear to provide the Appeals Council with a great deal of latitude in deciding which cases should be reviewed." *Mills*, 244 F.3d at 5.

The standard in the Fifth Circuit has been set such that a court should not alter a judgment unless a party's rights have been substantially affected. Fed.R.Civ.P. 61; *Mays*, 837 F.2d at 1364. Further, this standard has been extended to administrative proceedings where procedural processes are less than perfect but the parties rights have still not been impinged. *Audler*, 501 F.3d at 448 (citing *Mays*, 837 F.2d at 1364); *See Metcalf ex rel. ANM v. U.S. Com'r*

9

*Soc. Sec. Admin.*, No. 08-cv-1812, 2009 WL 5174368, at *5 (W.D. La. Dec. 18, 2009) ("It is not appropriate to automatically reverse merely because the Appeals Council failed to explain the weight it afforded evidence first presented to it."). This Court is also conscious of the concern in *Mays* that one of the purposes of the harmless error rule is to preserve judgments and conserve judicial resources. 837 F.2d at 1364 ("Remanding this case . . . would produce the same result while wasting time and resources.").

The lack of further explanation by the AC was harmless and is not required. Dr. Dyess' RFC Questionnaire submitted to the AC is a three page check-off list of what the claimant can lift and carry, how many hours a day the claimant can work, whether the claimant can kneel, squat, stoop, and the type, severity, and cause of the claimant's pain. The RFC Questionnaire appears to have been created by, and filled out at the request of, Asher's attorney. It was completed by Dr. Dyess on June 29, 2009, after the treating relationship with Asher had ended and it does not seem that Asher appeared in person for the assessment. Dr. Dyess is prompted on the third page of the RFC Questionnaire by Asher's attorney with the question relevant to the date of the alleged automobile accident: "Would your answers have been any different as of October 18, 2007?" Dr. Dyess replied, "yes–I would have allowed more activities prior to 10/18/07." The record that the ALJ considered contains over fifty pages of Dr. Dyess' treating notes on Asher's nearly monthly visits, in addition to frequent, detailed reports from Dr. Dyess to Asher's attorney. The medical reports taken by Dr. Dyess during Asher's visits to his clinic were in the record the ALJ considered and were stronger in their detail and description than the RFC Questionnaire submitted only to the AC. Based on the form and content of the RFC Questionnaire, Asher's rights have not been substantially affected by a lack of further

explanation from the AC and remand for the purpose of further explanation by the Commissioner would waste time and resources. In other words, the AC failure to explain the weight given to the RFC Questionnaire was harmless under the circumstances. Indeed, the RFC Questionnaire is, at best, a summary of Dr. Dyess' treatment of Asher and, at worst, is a check-list compendium prepared at the behest of Asher's attorney for the purpose of having Dr. Dyess re-emphasize and redress to the AC preexisting material in the record. This Court is not moved.

This Court recognizes that Asher insists the error was not harmless such that if Dr. Dyess' RFC Questionnaire was solely relied on as an accurate assessment of residual functioning capacity, Asher would likely be classified as disabled. This Court understands the result Asher is after; however, Asher confuses the RFC Questionnaire's place and weight in the overall record with the AC's complete reliance and acceptance of the Questionnaire in spite of all other evidence in the record. The ALJ's determination that Asher was capable of non-skilled light sedentary work was based on taking into consideration substantially similar medical information from Dr. Dyess already in the record.

Lastly, Asher relies upon *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000) for the proposition that an ALJ cannot reject a medical opinion without an explanation. While Asher's reliance on *Loza* is correct for the proposition for which it is cited, Asher incorrectly applies this proposition to her case. The court in *Loza,* in looking at whether substantial evidence existed for the ALJ's ruling, questioned why the ALJ did not consider a determination by the claimant's treating physician that the claimant could not return to full employment. 219 F.3d at 395. There, the claimant's primary treating physician, supported by four other treating physicians, placed the claimant on 100 percent military service-related disability status in addition to making

determinations regarding the claimant's mental health. *Id.* The court found the ALJ committed reversible error when the ALJ's determination failed to give any mention to the claimant's treating physician and the four other treating physicians' diagnoses of the claimant's mental disorders. *Id.*

Asher's case is starkly different from *Loza*. The primary difference is that Asher's case concerns the RFC Questionnaire submitted only to the AC, which was repetitive of information already in the ALJ's record. While the ALJ, in making his or her determination, is required to explain the weight of a claimant's treating physician, the procedural onus of the AC has been lessened by Fifth Circuit case law and changes to the AC's internal procedures according to the Executive Director of Appellate Operations. Further, in Asher's case, the ALJ did indeed take into account the treating relationship of Dr. Dyess and weighed Dr. Dyess' treating relationship with other evidence such as an RFC of a prior treating physician, a psychological evaluation which cast doubt on some of Asher's claims, and Asher's overall credibility concerning her symptoms. This is a far cry from completely ignoring the opinions of five treating physicians as in *Loza*.

**V. CONCLUSION**

This Court finds that the plaintiff's objections lack merit.

Accordingly,

IT IS ORDERED that the Court approves the Report and Recommendation of the United States Magistrate Judge and adopts it as its opinion in this matter.

IT IS FURTHER ORDERED that the Commissioner's Motion for Summary Judgment is GRANTED, the Plaintiff's Motion for Summary Judgment is DENIED and the plaintiff's complaint be and is hereby DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 27th day of December, 2011.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE